IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **TUYO HOLDINGS, LLC** | § | |
| | § | |
|    **PLAINTIFF** | § | |
| | § | |
| **V.** | § | |
| | § | CIVIL ACTION NO.: **5:22-cv-845** |
| **TRANSAMERICA LIFE INSURANCE** | § | |
| **COMPANY** | § | |
| | § | |
|    **DEFENDANT** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT
AND REQUEST FOR DECLARATORY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES, TUYO HOLDINGS, LLC, Plaintiff, and files this Original Complaint, against Defendant TRANSAMERICA LIFE INSURANCE COMPANY, and alleges as follows:

**I.**

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states. Further, this Court has subject matter jurisdiction over Defendant because it conducts business in the State of Texas and has purposefully availed itself of the benefits of conducting business with Plaintiff and others doing business in Texas, and the causes of action set forth herein arise from and are related to Defendant's activities in the State of Texas.

2. At all times relevant to this action, Defendant, either directly or indirectly, engaged in the business of marketing, promoting, distributing, and selling insurance policies within the State of Texas, with a reasonable expectation that the policies would be used or consumed in this state, and thus regularly solicited or transacted business in this state.

3. Defendant engaged in substantial business activities in the State of Texas. At all relevant times, Defendant transacted, solicited, and conducted business in the State of Texas through their employees, agents and/or sales representatives and derived substantial revenue from such business in Texas.

4. Further, Defendant committed violations, in whole or in part, of the Deceptive Insurance Practices under TEXAS INSURANCE CODE § 541.151 and the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE § 17.50(a)(4), against Plaintiff and/or its assignors in the State of Texas. As such, this Court has personal jurisdiction over Defendant.

5. Venue in the San Antonio Division of the United States District Court for the Western District of Texas is proper pursuant to U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this district.

## II.

## PARTIES

6. Plaintiff, TuYo Holdings, LLC is a Texas limited liability company with its principal place of business located at 616 E. Blanco Rd., Suite 202B, Boerne, Texas 78006.

7. Defendant, Transamerica Life Insurance Company ("Transamerica") is an Iowa corporation, registered with the Texas Department of Insurance which may be served by serving its registered agent CT Corporation System with an address of 1999 Bryan St., Ste. 900, Dallas, TX 75201. **Citation is requested at this time. Service will be via private process service.**

## III.

## **FACTUAL ALLEGATIONS**

8.  This lawsuit arises out of, and in response to, the actions and omissions of Transamerica with respect to Policy No. 60162687 for the insured Barry Siegal, a resident of Connecticut, (the "Policy"). Specifically, this lawsuit arises out Transamerica's wrongful termination of the Policy, and wrongful refusal to reinstate the Policy during the contractually provided grace period without full underwriting.

9.  Barry Siegal qualified for and purchased a term life insurance policy from Transamerica. In 2013, Mr. Siegal converted the Policy through Transamerica to a universal life policy. Based on information and belief, Mr. Siegal paid premiums to Transamerica to keep the Policy in force with the expectation that Transamerica would abide by the terms of the Policy.

10. In 2013, Mr. Siegal sold all rights to the Policy to a third-party purchaser, Settlement Group Inc., which in turn transferred all rights to the Policy to Dover Capital Strategies, LLC. Based on information and belief, Settlement Group Inc. and Dover Capital Strategies, LLC purchased the Policy based on the promises of Transamerica within the Policy and/or paid premiums to Transamerica to keep the Policy in force. These actions were taken with the expectation that Transamerica would abide by the terms of the Policy.

11. In 2015, Policy Services, Inc. ("Policy Services") purchased all rights to the Policy from Dover Capital Strategies. Policy Services, based in San Antonio, Texas, notified Transamerica that it was the new owner of the Policy and updated the address for notification purposes under the Policy. Transamerica acknowledged Policy Service's San Antonio office as the new address for the owner of the Policy and directed correspondence to the San Antonio address.

Policy Services paid premiums to Transamerica with the expectation that Transamerica would abide by the terms of the Policy and the promises it made therein.

12. On March 15, 2022, TuYo Holdings, LLC, ("TuYo"), Plaintiff in this matter, entered into a purchase and sale agreement with Policy Services, Inc.'s Chapter 7 Trustee to acquire all right, title, and interest, to include legal remedies, in the Policy. On April 12, 2022, United States Bankruptcy Judge Michael Parker of the Western District of Texas entered an order approving the purchase and sale agreement.

13. Plaintiff, as assignee, has all rights to the Policy that Mr. Siegal, Settlement Group Inc., Dover Capital Strategies, LLC, and Policy Services had against Transamerica, including all causes of action.

14. Upon information and belief, Transamerica routinely provided statements to Policy Services indicating the amount of premium necessary to ensure the Policy would remain in force. According to the Policy, if the Policy entered a grace period, Transamerica would "let [the policy owner] know by sending [the policy owner] a Notice. The Notice will tell [the policy owner] the amount [the policy owner] must pay to keep the policy in force." *See* Exhibit A, a true and correct copy of Transamerica Life Insurance Policy No. 60162687. Pursuant Transamerica's statements and Notices as required by the Policy, Policy Services paid premiums consistently for more than sixty-five (65) months and kept the Policy in force. Based on information and belief, Policy Services relied on the grace period notice provision of the Policy and expected Transamerica to abide by the Policy.

15. In late 2020 and 2021, Transamerica allegedly determined the Policy had entered a grace period. Pursuant to the Policy, Transamerica was required to send a Notice to Policy

Services, indicating the amount owed to keep the Policy in force and the date in which the payment was to be made.

16. However, upon information and belief, Transamerica did not send a grace period notice during January, February, or March of 2021. It follows that Policy Services did not receive a grace period notice during January, February, or March of 2021. As a result of Transamerica's failure to provide a grace period notice, Policy Services was unaware the Policy had entered a grace period and it did not pay an additional premium.

17. Transamerica now takes the egregious position that Policy Services allegedly failed to make premium payments required to keep the policy in force. Due to the alleged failure to pay, Transamerica delivered a Notice of Termination to Policy Services dated March 16, 2021 informing Policy Services that the Policy had "lapsed" as Transamerica had not received a premium payment that was due March 6, 2021. *See* Exhibit B, a true and correct copy of Transamerica's March 16, 2021 Notice of Termination to Policy Services. According to the Notice or Termination, the last date to make a premium payment was March 6, 2021.

18. In its Notice of Termination, Transamerica alleged it had sent correspondence dated January 5, 2021 to Policy Services indicating the Policy entered its grace period (the "Alleged Grace Period Notice"). Policy Services never received the Alleged Grace Period Notice and upon information and belief, Transamerica has failed to provide proof or even evidence that it sent the Alleged Grace Period Notice or that Policy Services received the required Grace Period Notice.

19. In response to Transamerica's Notice of Termination, Policy Services delivered correspondence to Transamerica dated April 1, 2021 acknowledging the receipt of the March 16 Notice of Termination, but informing Transamerica that Policy Services never received the Alleged Grace Period Notice (the "Policy Services Request for Extension"). *See* Exhibit C, a true

and correct copy of the Policy Services' April 1, 2021 Request for Extension delivered to Transamerica. Policy Services indicated Transamerica failed to provide adequate notice of the grace period and that the lapse of the Policy was improper based on Policy requirements. *See* Exhibit C. Policy Services further requested an extension of the grace period and a statement of the amount due to bring the policy out of grace so that it could promptly pay said amount. *Id.*

20. After sending its Request for Extension, Policy Services called Transamerica by phone to discuss this matter. However, Transamerica did not acknowledge the Alleged January 5 Grace Period Notice, nor did it resend a copy of the Alleged Grace Period Notice.

21. In a letter dated April 1, 2021 and addressed to Policy Services' San Antonio address, Transamerica extended the time in which Policy Services had to pay the Policy premiums to preserve coverage (the "Extension Notice"). The Extension Notice states it is a follow up to the "policy lapse notice you recently received from us." *See* Exhibit D, a true and correct copy of the April 1, 2021 Extension Notice from Transamerica. The body of the April 1, 2021 Extension Notice reads as follows:

**Re: COVID-19**

**Dear Policy Services Inc:**

**We're following up on the policy lapse notice you recently received from us.**

**In response to the novel coronavirus (COVID-19), and in order to give you more time to pay your premium and preserve your coverage, we're extending by an additional 30 days the period of time in which you can pay. In effect, you have a 90-day grace period from when your last premium was due to make payment without your policy lapsing. If you pay your overdue premium within this 90-day period, your policy will stay in force.**

**The additional 30-day period does not act as forgiveness of any premiums owed under your policy, but it does extend your time to pay and keep coverage.**

**If you have any questions, please contact your insurance professional or call us at 1-800-852-4678.**

**This letter supersedes any billing, grace period, or lapse notices we previously sent you.**

**Sincerely,**

**Transamerica**

22. Based on information and belief, Transamerica was aware of inconsistencies, errors, or other problems in the preparation and/or delivery of its grace period notices. Based on information and belief, Transamerica knew, or had reason to know, its policy owners were not consistently or reliably receiving their grace period notices because delivery of correspondence through the United States Postal Service was unreliable during the height of the coronavirus pandemic or because it knew of internal problems issuing grace period notices due to interruptions in its labor force.

23. In reliance on the Extension Notice, which extended the due date of the premium to at least June 4, 2021, Policy Services delivered a letter from its legal counsel and a check to Transamerica in the amount of $17,792.00, which was believed to be more than sufficient to take the Policy out of grace and prevent lapse. *See* Exhibit E, a true and correct copy of the April 22, 2021 letter delivered to Transamerica from Policy Services' legal counsel.

24. The April 22, 2021 premium payment was delivered to Transamerica on or before April 28, 2021.

25. Transamerica refused the payment and instead issued a response letter dated May 18, 2021 (the "Transamerica Response Letter"). *See* Exhibit F, a true and correct copy of Transamerica's May 18, 2021 Response Letter.

26. The Transamerica Response Letter included a letter dated January 6, 2021 from Transamerica that stated the Policy had "entered its grace period" and identified the deadline to pay the premium to keep the Policy in force was March 6, 2021. The May 18, 2021 Transamerica Response Letter was the first instance in which Policy Services was provided a grace period notice dated January 6, 2021.

27. The Transamerica Response Letter claimed the Extension Notice, dated Thursday April 1, 2021, only extended the Policy premium payment deadline to Monday, April 5, 2021. Transamerica failed to send the Thursday, April 1, 2021 Extension Notice through certified mail or through overnight delivery. Thus, Transamerica could not guarantee or ensure delivery of the Extension Notice before the alleged Monday, April 5, 2021 deadline.

28. Transamerica's interpretation of the Extension Notice is incorrect. Policy Services' April 22, 2021 premium payment was sufficient to keep the Policy in force.

29. Transamerica's incorrect interpretation of the Extension Notice, as stated in correspondence to Policy Services, would result in an impossibility of performance. Thus, Transamerica knowingly and deceptively sent correspondence to Policy Services that misrepresented the terms of the Policy, the benefits or advantages promised by the Policy, and made a misrepresentation for the purpose of inducing or that tends to induce the policy holder to allow an existing policy to lapse or to forfeit or surrender the policy.

30. Plaintiff is damaged as the Policy is now terminated and Plaintiff may no longer enjoy the benefits of the Policy as bargained for Mr. Siegal. Additionally, Transamerica wrongfully kept all premiums paid related to the Policy.

31. As of the date of this filing, Transamerica has refused to accept payment from TuYo and has failed to reinstate the Policy.

## IV.

## CAUSES OF ACTION

### Count I
### Declaratory Judgment

32. Plaintiff restates and incorporates by reference the allegations set forth in all preceding and forgoing paragraphs as if set forth fully herein.

33. This suit is being brought pursuant to 28 U.S.C. § 2201 which states in relevant part:

> … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not such relief is or could be sought.

34. Plaintiff seeks a declaratory judgment under the U.S. Declaratory Judgment Act declaring that the Siegal Policy made the subject of this lawsuit was wrongfully allowed to lapse by Transamerica and that Plaintiff is entitled to make payments to bring the Policy current.

35. An actual and live controversy exists because the determination of this issue directly affects the Plaintiff's rights and interests under the Siegal Policy pending an order of this Court.

36. Plaintiff, through this action, seeks to have the Court declare that 1) the Policy was wrongfully declared lapsed by Transamerica; and 2) Plaintiff is entitled to make all payments necessary to bring the Siegal Policy current, and that upon such payments being made, the Siegal Policy will be in force in accordance with the terms and p

37. rovisions of the Policy contract.

### Count II
### Breach of Contract

38. Plaintiff restates and incorporates by reference the allegations set forth in all preceding and forgoing paragraphs as if set forth fully herein.

39. The Policy is a valid, enforceable contract between Plaintiff (through assigns) and Transamerica.

40. Plaintiff is a proper party to assert breach of contract against Transamerica.

41. Plaintiff has performed its contractual obligations under the Policy.

42. Transamerica breached the Policy by failing to send a grace period notice that included the amount due to keep the Policy in force and the date such premium was due.

43. Transamerica breached the Policy by terminating the Policy without providing notice that the Policy entered into grace period.

44. Transamerica breached the Policy by failing to accept the April 22, 2021 premium payment.

45. Transamerica breached the Policy and its amended terms by failing to accept the April 22, 2021 premium payment.

46. Transamerica's breach has caused injury and damages to Plaintiff.

## Count III
## Deceptive Insurance Practices

47. Plaintiff restates and incorporates by reference the allegations set forth in all preceding and forgoing paragraphs as if set forth fully herein.

48. Plaintiff and Transamerica are both persons as defined by TEXAS INSURANCE CODE § 541.002.

49. Plaintiff, as the owner and assignee of the Policy, has standing to assert a claim against Transamerica for Deceptive Insurance Practices under TEXAS INSURANCE CODE § 541.151.

50. Transamerica engaged in unfair or deceptive acts or practices in violation of TEXAS INSURANCE CODE § 541.151(1) by:

    a. making, issuing, and circulating a statement misrepresenting the terms of the Policy in violation of TEXAS INSURANCE CODE § 541.051(1)(A);

    b. making, issuing, and circulating a statement misrepresenting the benefits or advantages promised by the Policy in violation of TEXAS INSURANCE CODE § 541.051(1)(B);

    c.    making a misrepresentation for the purpose of inducing or that tends to induce the policyholder to allow a Policy to lapse or to forfeit or surrender the Policy in violation of TEXAS INSURANCE CODE § 541.051(1)(A);

    d.    making an announcement or statement containing an untrue, deceptive, or misleading assertion, representation, or statement regarding the business of insurance or a person in the conduct of the person's insurance business in violation of TEXAS INSURANCE CODE § 541.052(a);

    e.    misrepresenting the Policy by making an untrue statement of material fact in violation of TEXAS INSURANCE CODE § 541.061(1);

    f.    misrepresenting the Policy by failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made in violation of TEXAS INSURANCE CODE § 541.061(2); and

    g.    misrepresenting the Policy by making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact in violation of TEXAS INSURANCE CODE § 541.061(3);

51.    Transamerica engaged in unfair or deceptive acts or practices in violation of TEXAS INSURANCE CODE § 541.151(2) through violations of TEX. BUS. & COM. CODE § 17.46(b) by:

    a.    representing the Policy confers or involves rights, remedies, or obligations which it does not have; and

    b.    failing to disclose information concerning the Policy which was known at the time of the transaction if such failure to disclose such information was intended to induce Plaintiff, as assignee, into a transaction into which the

Plaintiff, as assignee, would not have entered had the information been disclosed.

52. Plaintiff, through rights as an assignee, relied on Transamerica's false, misleading, and deceptive acts or practices to its detriment.

53. Transamerica's false, misleading, and deceptive acts or practices was a producing cause of actual damages to Plaintiff through its rights as an assignee.

54. Transamerica's false, misleading, and deceptive acts or practices were committed intentionally and knowingly.

## Count IV
## Violations of Deceptive Trade Practices Act

55. Plaintiff restates and incorporates by reference the allegations set forth in all preceding and forgoing paragraphs as if set forth fully herein.

56. Plaintiff is a consumer pursuant to TEX. BUS. & COM. CODE § 17.45 and has standing to assert a Texas DTPA claim.

57. Transamerica violated engaged in unfair or deceptive acts or practices in violation of TEX. BUS. & COM. CODE § 17.50(a)(4) through its acts and violations of the TEXAS INSURANCE CODE as stated *supra*.

    a. making, issuing, and circulating a statement misrepresenting the terms of the Policy in violation of TEXAS INSURANCE CODE § 541.051(1)(A);

    b. making, issuing, and circulating a statement misrepresenting the benefits or advantages promised by the Policy in violation of TEXAS INSURANCE CODE § 541.051(1)(B);

    c.    making a misrepresentation for the purpose of inducing or that tends to induce the policyholder to allow a Policy to lapse or to forfeit or surrender the Policy in violation of TEXAS INSURANCE CODE § 541.051(1)(A);

    d.    making an announcement or statement containing an untrue, deceptive, or misleading assertion, representation, or statement regarding the business of insurance or a person in the conduct of the person's insurance business in violation of TEXAS INSURANCE CODE § 541.052(a);

    e.    misrepresenting the Policy by making an untrue statement of material fact in violation of TEXAS INSURANCE CODE § 541.061(1);

    f.    misrepresenting the Policy by failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made in violation of TEXAS INSURANCE CODE § 541.061(2); and

    g.    misrepresenting the Policy by making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact in violation of TEXAS INSURANCE CODE § 541.061(3).

58. Transamerica engaged in unfair or deceptive acts or practices in violation OF TEX. BUS. & COM. CODE § 17.46(b) by:

    a.    representing the Policy confers or involves rights, remedies, or obligations which it does not have; and

    b.    failing to disclose information concerning the Policy which was known at the time of the transaction if such failure to disclose such information was intended to induce Plaintiff, through rights as an assignee, into a transaction

into which the Plaintiff, through rights as an assignee, would not have entered had the information been disclosed.

59. Plaintiff, through rights as an assignee, relied on Transamerica's false, misleading, and deceptive acts or practices to its detriment.

60. Transamerica's false, misleading, and deceptive acts or practices was a producing cause of actual damages to Plaintiff through its rights as an assignee.

61. Transamerica's false, misleading, and deceptive acts or practices were committed intentionally and knowingly.

**Count V**
**Unjust Enrichment**

62. Plaintiff restates and incorporates by reference the allegations set forth in all preceding and forgoing paragraphs as if set forth fully herein.

63. Plaintiff pleads in the alternative that Defendants have been unjustly enriched to Plaintiff's detriment. A person is unjustly enriched when he obtains a "benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Unjust enrichment occurs when a person sought to be charged has wrongfully secured a benefit or has passively received a benefit which would be unconscionable to retain. *City of Corpus v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex. App.—Corpus Christi 1987, writ denied).

64. Transamerica offered an extension of time to pay premiums due to problems with COVID-19. However, based on Transamerica's interpretation of the extension, it was sent at such a late date that Policy Services could not utilize it. Transamerica's implicit recognition of the issues concerning delivery of its grace period notices, coupled with its interpretation that the extension period passed before Policy Services could utilize the extension, is unconscionable. This action is

further unconscionable in light of the premium payments Transamerica received regarding the Policy.

65. Transamerica should not be able to retain the premiums paid under the Policy and under unjust enrichment, Transamerica is liable to return the premiums paid or reinstate the Policy.

## Count VI
## Promissory Estoppel

66. Plaintiff restates and incorporates by reference the allegations set forth in all preceding and forgoing paragraphs as if set forth fully herein.

67. An estoppel is ordinarily based on a promise or representation made to do something in the future that was made to induce action or is reasonably calculated to induce action. In other words, the promisor should be able to foresee that the promisee will rely on the promise. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). Additionally, the other party has to be shown to have taken definite action in reliance on the promise or representation to their own detriment. *Clifton v. Ogle*, 526 S.W.2d 596, 603 (Tex. Civ. App.—Fort Worth 1975).

68. In the present case, Transamerica represented and promised that the Policy made the subject of this lawsuit would not lapse if timely payments were made in accordance with the terms of correspondence delivered to Plaintiff's predecessor in interest. Plaintiff's predecessor in interest relied to its detriment on the promises and representations made by Transamerica by taking the definite action of delivering payments in accordance with the terms of the correspondence, and Transamerica should now be estopped from taking the position that the Policy lapsed due to nonpayment.

## Count VII
## Estoppel by Contract

69. Plaintiff restates and incorporates by reference the allegations set forth in all preceding and forgoing paragraphs as if set forth fully herein.

70. Estoppel by contract means that a party is bound by the terms of the party's own contract. *Hawn v. Hawn*, 574 S.W.2d 883, 886 (Tex. Civ. App.—Eastland 1978, writ ref'd n.r.e.) The effect of estoppel by contract is to prevent a party to a contract from taking a position inconsistent with the contract to the prejudice of another. *Id.*

71. In the present case, Transamerica should be estopped from allowing the Policy made the subject of this suit to lapse because it took a position that payments would be allowed within a certain time frame, and it should be estopped from now taking a position inconsistent with its own contract and correspondence.

## V.

## **CONDITIONS PRECEDENT**

72. Plaintiff contends and asserts that it has complied with and performed all conditions precedent necessary to pursue these claims and requests for recovery, if any such preconditions exist.

## VI.

## **ATTORNEY'S FEES**

73. As a result of the Defendants' conduct, Plaintiff was required to retain legal counsel and now seeks its reasonable and necessary legal fees and expenses pursuant to TEX. CIV. PRAC. & REM. CODE § 37.009, TEX. BUS. & COM. CODE § 17.009 and TEX. INS. CODE § 541.152.

## VII.

## **DEMAND FOR JURY**

74.     Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby requests a trial by jury of all issues of fact in this case.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff, TuYo Holdings, LLC prays that this Court set this matter for trial and after adequate notice to Defendant:

1. Compensatory damages in excess of the jurisdictional amount, including but not limited to, non-economic damages in excess of $75,000.

2. Enter judgment against Defendant, on all claims for declaratory relief including, but not limited to a determination that

    a. the Policy was wrongfully declared lapsed by Defendant; and

    b. Plaintiff is entitled to make all payments necessary to bring the Policy current, and that upon such payments being made, the Policy will be in force in accordance with the terms and provisions of the Policy contract.

3. Enter judgment that finds that Defendant knowingly and intentionally committed violations of the Texas Deceptive Insurance Practices under TEXAS INSURANCE CODE § 541.151 and the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE § 17.50(a)(4), against Plaintiff and/or its assignors;

4. Award Plaintiff all damages allowed under the Texas Deceptive Insurance Practices under TEXAS INSURANCE CODE § 541.151 and the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE § 17.50(a)(4), including treble damages;

5. Order Defendant to comply with the Policy and reinstate the Policy upon payment of premiums or alternatively award Plaintiff actual damages and an award of treble economic damages;

6. Award Plaintiff all reasonable and necessary attorneys' fees, expenses, and costs incurred in this litigation;

7. Pre-Judgment Interest at the highest lawful rate allowed by law;

8. Post judgment Interest on the judgment at the highest legal rate from the date of judgment until collected;

9. Further grant Plaintiff TuYo Holdings, LLC such other and further relief, both in law and equity, to which it may show itself justly entitled.

Respectfully Submitted,

**BROCK UPHAM YOST & STRIEBER, PLLC**
616 East Blanco Road, Suite 202B
Boerne, Texas 78006
Telephone:    830-816-9033
Facsimile:    830-584-0774

By:    /s/ GREGORY B. YOST
         GREGORY B. YOST
         State Bar No. 24082391
         Email: greg@buys-law.com
         LES J. STRIEBER
         State Bar No. 19398000
         Email: les@buys-law.com

**MCKINNIE & PAUL, PLLC**
8610 North New Braunfels, Suite 320
San Antonio, Texas 78217
Telephone:    210-247-2220

JASON E. MCKINNIE
State Bar No. 24070247
Email: jmckinnie@mckinniepaul.com

**ATTORNEYS FOR PLAINTIFF
TUYO HOLDINGS, LLC**